(Hamilton County, Ohio, Court of Common Pleas.)

WHITE, ADM'R v. LAPP.

---

*Bill of exceptions must be made part of the record.—*
1. Where the record fails to show that a bill of exceptions was made part of the record of the case, it can not be considered by a reviewing court—Statement in the bill of exceptions that it is made a part of the record is not sufficient; that fact must appear from the record outside of the bill of exceptions.

*"Months" as used in Ohio Statutes means calendar months, not lunar months—*
2. The word "months" in our statutes refers to calendar months, not to lunar months, and the rule of the English common law that "months" as used in statutes means lunar months does not prevail in Ohio.

---

HOLLISTER, J.

White, as administrator of the estate of a deceased owner of real estate, sought a sale thereof in the probate court to pay debts. Such proceedings were had that on June 3, 1895, the order for sale was returned and filed. On the same day the administrator, as plaintiff, filed a motion to confirm the sale. On June 8, defendants filed a motion to vacate the sale. And on June 22 an order was made confirming the sale. This order was the last step in the proceedings, as shown by the transcript which was filed July 2.

Apparently no exception was taken to the order of June 27.

The defendants filed a bill of exceptions in this court on October 1, 1895, wherein it is recited, after noting that the court made an order, June 27, confirming the sale, "That afterwards, on August 31, 1895, the court made its certain order overruling the said defendant's motion, filed on June 8, 1895, praying to have said proceedings and order of sale vacated,

to which ruling the said defendants took their exception, and now come and present this their bill of exceptions, which is allowed, etc.

The transcript of docket and journal entries is silent after July 2. But assuming that the entry of August 31, was in the record, that entry was a mere nullity, for the reason that the motion to vacate and set aside the sale was pending when the motion to confirm the sale was granted, and that the court could not have confirmed the sale without overruling the motion to set it aside.

But it does not appear from the record that any bill of exceptions is made a part of the record in the court below. The only evidence of that fact is contained in the bill of exceptions itself. This omission in the record is fatal to the present proceedings in error. Such fact must appear from the record outside of the bill of exceptions. Hill v. Bassett, 27 Ohio St., 597; Burk v. Railroad Co., 26 Ohio St., 643; Black v. George, 26 Ohio St., 629, 631.

And there are other serious objections to the validity of the proceedings in error which it is not necessary to decide, but an order may be taken granting the motion to dismiss the proceedings in error.

There was, however, one question raised by counsel for the plaintiff, which is, perhaps, entitled to extended discussion. His point is that, as the petition in error was not filed until December 26, and the final order in the probate court was made on June 27, more than six months elapsed between the two dates, and the petition in error was, therefore, filed too late, for the reason that the words "six months," in the statute providing for proceedings in error, mean six lunar and not six calendar months.

This question has not, apparently, been passed on in this state, and there is no statute on the subject.

Section 6723, Rev. Stats., as amended, 89 O. L., 45, reads: "No proceeding to reverse, vacate or modify a judgment or final order shall be commenced, unless within six months after the rendition of the judgment or the making of the final order complained of * * *." The proceedings were commenced by the filing of the petition in error and the service of summons. Section 6713, Rev. Stats.

Computing the length of time between June 27 and December 26, under statutory rule of "excluding the first day and including the last" (Sec. 4951), the resultant is 182 days, exactly six calendar months, but more than six lunar months of twenty-eight days each, and more than six months of thirty days to the month.

The rule at the common law, when a statute spoke of a month, was that the month intended was a lunar month. 1 Comyns Dig., B. 617; Lacon v. Hooper, 6 T. R., 224, 226. Lord Kenyon, in the case last cited, says: "In all acts of parliament where 'months' are spoken of, without the word 'calendar,' and nothing is added from which a clear inference can be drawn that the legislature intended calendar months, it is understood to mean lunar months." See also 2 Bl. Com., 14; Talbot v. Linfield, 3 Burrows, 1455; and note "a" in the report of the same case in 1 W. Block, 450; Co. Lit., 135b; King v. Adderley, 2 Doug., 463; Bishop of Peterborough v. Catesby, 2 Cro. Jac., 166. In Barksdale v. Morgan, 4 Mod., 185, the court says: "In common parlance the month is taken to be twenty-eight days in all cases except in quasi impedit, and, therefore, it must be so many days according to the common and known acceptance of the word."

And we see here the reason why, in the construction of statutes, the intention of parliament by the use of the word month was held to be that it should mean in statutes that which it meant in ordinary parlance and common usage.

And in Georgia, where the common law obtained before the revolution, it was held, in 1832, that where a decree nisi was entered and six months time given to the mortgagor to pay, that on his failure to do so within six lunar months the mortgagee was entitled to a decree absolute. Redmond v. Glover, Dudley's Rep. 107.

The common law rule was followed in New York in 1818. Long v. Halling, 15 Johns, 119; and in 1830, Parsons v. Chamberlain, 4 Wend., 512, and was the law until the legislature expressly provided that the word month in a statute should be regarded as a calendar and not a lunar month. Rev. Stat. of New York, vol. 5 and 6, p. 3638, Sec. 26; and other states have made the same provision. Pub. Stat. of Mass. (1882), p. 59; Illinois Stat. (1895), 1462, div. 1; Kansas Stat., vol. 2, Sec. 6687, div. 11; Indiana Stat., vol. 1, Sec. 240, div. 5; Oklahoma Stat. (1893), Sec. 2687.

But the common law rule has not been followed in many of the states. In §Avery v. Pixley, 4 Mass., 460, the court observed that "in this state, as well before as since the revolution, a month mentioned generally in any act has immemorially been considered as a calendar month." Says Judge Field in Gross v. Fowler, 21 Cal., 393, 396, in construing the word month in a statute: "It is not a technical term, and it must, therefore, be taken in its ordinary and general sense," and the word was construed to mean a calendar and not a lunar month. See also Sprague v. Norway, 31 Cal., 174; Savings & Loan, Soc. v. Thompson, 32 Cal., 347, and the same judge, in the opinion in Sheets v. Sheldon's Lessee, 2 Wall., 177, uses substantially the same language at pages 189 and 190. The question was not decided, for it was not necessary, the court holding that the word month in contracts and deeds "must be construed, where the parties have not themselves given to it a definition, and there is no legislative provision on the subject, to mean calendar and not lunar months," and this is the rule in mercantile contracts at the common law. McMurchey v. Robinson, 10 Ohio, 496; Bouvier's Law Dict., 254.

The supreme court of Connecticut held that the word in statutes meant a calendar month, on the ground that that meaning was given to the term generally by common understanding and intendment. Strong v. Birchard, 5 Conn., 357, 360. To the same effect are Mitchell v. Woodson, 7 Miss., 567; Williamson v. Farrow, 1 Bailey (S. C)., 611; Kimball v. Lamson, 2 Vt., 138, 142 Pyle v. Pauldig, 7 J. Marshall, 202, 207; Shopley v. Garey, 6 S. & R., 539.

The extent to which the common law is followed in Ohio, depends on circumstances, and is best stated by Judge Thurman in Bloom v. Richards, 2 Ohio St., 387: "The English common law," says he, "so far as it is reasonable in itself, suitable to the condition and business of our people, and consistent with the letter and spirit of our federal and state constitutions and statutes, has been and is followed by our courts, and may be said to constitute a part of the common law of Ohio." See, also, Carey v. Montgomery County, 19 Ohio St., 245, 281 Railroad Co. v. Keary, 3 Ohio St., 201, 205; Kerwhocker v. Railroad Co., 3 Ohio St., 172, 177; Drake v. Rogers, 13 Ohio St., 21, 36; Lindley v. Coates, 1 Ohio, 245.

Now the common law rule was changed by the act of 13 and 14., Vic., chap. 1, Sec. 4, so that since that time (1850) the word month in an act of parliament means a calendar month unless words be added showing lunar months to have been intended, and this change was doubtless made to make the meaning of the word in statutes more nearly conform to the general understanding of the people.

Even as far back as 1795, Lord Kenyon remarked, in Lacon v. Hooper, supra, at page 226: "I confess I wish that when the rule was first establish-

ed, it had been decided that 'months' should be understood to mean calendar and not lunar months; but the contrary has been determined so long and so frequently that it ought not again be brought into question."

The section of the statutes, 6723, was passed in 1889, and the test to be applied to it is what the legislature meant by the word months. It cannot be doubted but that nowadays the word month in ordinary parlance means a calendar month, and this is so, not only with respect to mercantile transactions, but relative to all the common affairs and transactions of life. It may be doubted whether the fact that the common law of England regarded the word month, as used in that statute, to mean a lunar month, was within the knowledge of the members of the assembly which passed the act in question. That this meaning accompanied such use of the word is probably not within the learning of lawyers generally. In practice the rule has doubtless been to regard the word month, so used, as a calendar month, as a matter of course, just as that meaning is really given to the word wherever and whenever used.

This conclusion must, therefore, be that the English common law rule is not in accordance with the habits, customs, and common understanding of our people, and does not become a part of the common law of this state, and that the legislature, when it used this word in the act in question, intended that it should have the same meaning that is given to it in ordinary parlance.

Counsel for plaintiff lays much stress on the fact that notwithstanding the decisions of the California Supreme Court, the legislature of that state afterwards, in 1872, enacted that the word month in statutes should mean calendar month, unless otherwise expressed. This does not seem important under the circumstances of the passing of that act, for it is found in that part of the code of California adopted that year, wherein definitions are given many words used in the code. And further, the legislature of Massachusetts, notwithstanding the rule adopted by the court in that state, enacted long afterwards, that month meant calendar and not lunar, a proceeding entirely unnecessary, in view of the decisions of the supreme court of judicature.

William G. Williams, for plaintiff.
William Disney, for defendant.